In the United States District Court
for the Western District of Pennsylvania

| | |
|---|---|
| **Nicole Maloney o/b/o/ L.T.M.B.,** | ) <br> ) <br> ) |
| *Plaintiff* | ) <br> ) <br> ) <br> ) **Civil Action No. 05-155E** <br> ) |
| **Joanne Barnhart,** <br> **Commissioner of Social Security,** | ) <br> ) <br> ) <br> ) |
| *Defendant* | ) <br> ) <br> ) |

## OPINION AND ORDER

Pending before the Court are the Motions for Summary Judgment of Plaintiff Nicole Maloney (Doc. #6) and Defendant Commissioner of Social Security (Doc. #8). Plaintiff filed a claim for supplemental security income ("SSI") on behalf of her minor daughter, Lexxis Maloney-Barnes, who suffers from proximal femoral focal deficiency ("PFFD"). For the reasons stated herein, Plaintiff's Motion for Summary Judgment is granted to the extent it seeks a remand to the Commissioner and is otherwise denied, and Defendant's Motion for Summary Judgment, requesting that we affirm the Commissioner's decision denying Plaintiff's claim for supplemental security income ("SSI") is denied.

**I.      Standard of Review.**

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C.

§405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). The Administrative Law Judge ("ALJ"), however, must evaluate all relevant evidence and explain his reasons for rejecting any such evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

## II. Procedural Background.

On September 16, 2003, Plaintiff protectively filed on behalf of her daughter, Lexxis Maloney Barnes, an application for supplemental security income ("SSI"). In her application, Plaintiff claimed that Lexxis has been disabled from birth due to her having proximal femoral focal deficiency "(PFFD").[1] The claim initially was denied and Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ hearing was held using video teleconference on December 10, 2004. On January 27, 2005, the ALJ denied Plaintiff's claim for SSI, finding Lexxis "had not been under a 'disability' at any time from the alleged onset date through the date of this decision." R. 20. Plaintiff then filed the instant Complaint on May 18, 2005.

## III. Legal Analysis.

This is a claim for SSI for a minor dependent child. For a child under the age of 18 to be considered disabled and eligible for SSI under the Social Security Act, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a)(3)(C)(I)(2004). The Regulations outline a three-step sequential evaluation process to

---

[1] As explained in Defendant's Brief in Support of Her Motion for Summary Judgment: "Proximal femoral focal deficiency is a rare congenital anomaly characterized by limb malrotation, deficiency of the iliofemoral articulation, and limb length discrepancy." Defendant's Supporting Brief, p. 2 n. 1 (citation omitted).

determine a child's eligibility for SSI. 20 C.F.R.§ 416.924 (2001).  Under this analysis, a child will be found disabled if: (1) he or she is not working or engaged in substantial gainful activity; (2) he or she has a medically determinable impairment or combination of impairments that is severe; and (3) if the impairment(s) meets, medically equals, or functionally equals the severity of impairments listed in 20 C.F.R. § 404, subpt. P, app. 1 (2004).  Significant for this case, for an impairment to be functionally equal in severity, a child must show "marked" limitations in two domains of functioning or "extreme" limitation in one domain.  20 C.F.R.§ 416.926(a) (2005). The six development and functioning domains include: (1) acquiring and using information;  (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926 a(b)(1)(i)--(vi) (2005).

      The parties agree that Lexxis is not working or engaged in substantial gainful activity and that she has a medically determinable impairment or combination of impairments that is severe. At issue in this appeal is whether Lexxis's impairment(s) meets, medically equals, or functionally equals the severity of impairments listed in 20 C.F.R. § 404, subpt. P, app. 1 (2004). The Commissioner contends that Lexxis's impairment does not meet, medically equal, or functionally equal the severity of impairments listed in 20 C.F.R. § 404, subpt. P, app. 1 (2004). To the contrary, Plaintiff argues that Lexxis's impairment does meet, medically equal, or functionally equal the severity of impairments listed in 20 C.F.R. § 404, subpt. P, app. 1 (2004). Plaintiff also argues that she did not voluntarily and knowingly waive her right to counsel and that as a result of her waiver, her claim was prejudiced and decided adversely against her:

> [i]n the case at hand, it is clear that Claimant did not knowingly and voluntarily waive her right to counsel. By reviewing the Administrative Law Judge's decision, he failed to fully and fairly develop the record. He did not discuss all of

> Claimant's treatment, specifically the records that show the lengthy and difficult medical procedures that Claimant would experience. The Administrative Law Judge did not carry out his special duty and failed to inquire or probe the relevant facts of the case. This alone shows that Plaintiff was prejudiced.

Plaintiff's Supporting Brief, unnumbered page 7.

### A. Waiver of right to counsel and attendant prejudice or unfairness.

We address first Plaintiff's arguments regarding her waiver of her right to counsel and the subsequent prejudice to her claim.

### 1. Waiver of counsel.

As explained by the United States Court of Appeals for the Third Circuit in its non-precedential decision in Phifer v. Commissioner, 84 Fed.Appx. 189 (3d Cir. Dec. 22. 2003):

> [w]hile there is no constitutional right to counsel at a social security disability hearing, a claimant does have a statutory and regulatory right to counsel at such a hearing. See Holland v. Heckler, 764 F.2d 1560, 1562 (11th Cir.1985); 42 U.S.C. § 406; 20 C.F.R. §§ 404.1700- 404.1707. The claimant must be provided with notice of his right to counsel and can waive this right as long as such waiver is knowing and intelligent. See, e.g., Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir.1982) (describing how a claimant can "knowingly and intelligently waive his statutory right to counsel.")  A waiver in and of itself is not a sufficient justification for remand. Rather, remand is proper where the lack of counsel prejudices a claimant or where the lack of counsel leads to an administrative proceeding marked by unfairness. Livingston v. Califano, 614 F.2d 342, 345 (3d Cir.1980).

Id. at 190-91. Also helpful is the case of Smith v. Schweiker, 677 F.2d 826 (11th Cir.1982), wherein the United States Court of Appeals for the Eleventh Circuit explained that "[t]he Secretary has a duty to notify a claimant of his or her right to counsel before the hearing." Id. at 828. The Smith court further explained that: [a] person may waive his right to counsel in Social Security hearings. Even if the notice . . . was inadequate, a claimant may express a desire at the hearing not to be represented by an attorney. But it is equally clear that such a waiver must establish, at some point, that the claimant is 'properly apprised of his options concerning

4

representation' to be effective. A claimant cannot knowingly and intelligently waive his statutory right to counsel when he is not adequately informed of it either in a prehearing notice or at his hearing." In the Smith case, the flaw in the notice sent out was "their failure to inform the claimant fully as to the possibility of free counsel and limitations on attorney fees to 25% of any eventual award." Id. at 829.

 Here, prior to the hearing Plaintiff received the following information from the Commissioner. On November 17, 2003, Plaintiff got notice that her claim for SSI for Lexxis had been denied and that she disagreed with the decision she could request a hearing. R. 28, 30. This notice contained a section entitled "**If You Want Help With Your Appeal**;" this section explained:

> [y]ou can have a lawyer, friend, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of these groups that can help you with your appeal. If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

R. 30-31. On March 4, 2004, Plaintiff received a letter from the Commissioner about her request for a hearing before an ALJ. R. 34-35. One section of the letter was entitled "**Your Right to Representation**" and stated:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it.
>
> We have enclosed the leaflet 'Social Security and Your Right to Representation.' We are also enclosing a list of groups that can help you find a representative.

> If you get a representative, you or that person should call us to give us his or her name, address and telephone number. You will also need to complete our Form SSA 1696-U4 Appointment of Representative. Any local Social Security office can give you this form.

Id. Plaintiff also received a list of contacts for obtaining a private attorney and for free legal representation. R. 37. Additionally, on August 27, 2004, she received a "Notice of Hearing" that told her, in pertinent part, "**You May Choose to Have A Person Represent You**," and "[i]f you want to have a representative, please get one right away." R. 22.

Ultimately, at the ALJ hearing itself, Plaintiff, Lexxis's mother, appeared and without representation. Concerning her proceeding without representation, the following exchange took place between the ALJ and Plaintiff:

> ALJ: Now, Ms. Maloney, I understand that you wish to proceed today without representation. Is that correct?
>
> WIT: That is correct.
>
> ALJ: Okay. And did you attempt to get a representative?
>
> WIT: No, I have not.
>
> ALJ: Okay. You nonetheless wish to go ahead today.
>
> WIT: Correct.
>
> ALJ: All right. Let the record show that the claimant is knowingly willing to waive the right to representation.

R. 176.

Having reviewed the information received by Plaintiff before the ALJ hearing and the substance of the ALJ's questioning of Plaintiff at the hearing concerning her lack of representation, we find that Plaintiff did knowingly and voluntarily waive her right to counsel. Having so found, however, our analysis is not complete.

**2. Prejudice or unfairness as a result of lack of counsel**.

As succinctly explained by the court in Jozefick v. Shalala, 854 F. Supp. 342(M.D. Pa. 1994):

> whether [claimant] knowingly and voluntarily waived her right to counsel is not dispositive. Even if there is a failure to knowingly and voluntarily waive the right to counsel, the absence of an attorney representative does not necessarily warrant a remand. Correspondingly, a knowingly and voluntarily waiver of counsel does not preclude a remand. In both instances – where there has been a fully-informed and voluntary waiver of counsel and where the record does not evince such a waiver – the ALJ must exercise a "'heightened level of care' and 'assume a more active role' in the development of the record." In both instances, the reviewing court must determine whether there was clear prejudice to the claimant or unfairness in the administrative hearing.
>
> A hearing may be characterized as "unfair" where the ALJ has failed to discharge his obligation to develop a compete record. The question is not "whether every question was asked which might have been asked had [the claimant] been represented by an attorney, [but] whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.

Id. at 347-48 (internal citations omitted).

To determine whether or not the ALJ discharged his obligation to develop a complete record, it is necessary to examine the transcript of the ALJ hearing in light of Plaintiff's claim that Lexxis was disabled due to her suffering from PFFD. In this matter, the critical issue with respect to Plaintiff's claim was Lexxis's abilities within the domain area of "Moving About and Manipulating Objects." With respect to this domain, the regulations explain that with respect to "older infants and toddlers (age 1 [12 months old] to attainment of age 3 [36 months old])," such as Lexxis who was 19 months old at the time of the ALJ hearing, "[a]t this age, you should begin to explore actively a wide area of your physical environment, using your body with steadily increasing control and independence from others. You should begin to walk and run without

7

assistance, and climb with increasing skill. You should frequently try to manipulate small objects and to use your hands to do or get something that you want or need. Your improved motor skills should enable you to play with small blocks, scribble with crayons, and feed yourself." 20 C.F.R. § 416.926 a(b)(1)(iv).

  Turning to the transcript of the ALJ hearing, relevant to Lexxis's abilities within the domain area of "Moving About and Manipulating Objects," the ALJ explained that "there is a congenital malformation here. There is a difference in the leg length, but there is also a hip abnormality. The ALJ then asked Plaintiff "have you noticed anything so far with Lexxis, that would suggest that she's experiencing any difficulty in the learning area?" R. 177-78. Plaintiff answered: "She doesn't have any mental disability with learning, but physically she does have some difference in comparison with other children that are her age. She does have a pretty significant limp when she walks, which I'm told is because of the way that the deformed hip and the top of the bone fit together." R. 178. The ALJ then asked Plaintiff about Lexxis's reaching of developmental milestones. R. 178. Plaintiff explained that Lexxis could hold a bottle, and had no trouble with her hands. R. 178. Plaintiff further explained: "But her coordination. She doesn't have very good coordination as far as walking. She is clumsy. She does trip a lot. Of course she does require a special shoe to walk.. Without her shoe, she kind of has come up with her own way to partially crawl and walk at the same time." R.178. Plaintiff also explained that Lexxis has the special shoe on most times when she is awake and that the brace goes right up to the back of Lexxis's knee. R. 179. The ALJ asked, if Lexxis "wanted to walk around the room a bit, would she be able to do so?" Plaintiff answered "with her shoe on, yes." R. 179. The Plaintiff also stated that Lexxis is very social but "she doesn't really keep up as far as like running around and playing." Plaintff further explained that Lexxis is very independent, she will play by herself more

than with others, that she will share, that she does the things that Plaintiff would expect her to do at this age, that she is trying to grasp things and to eat, she eats finger foods and she is trying to use silverware. R. 179-180.

> Plaintiff then testified about Lexxis's upcoming surgery:
>
> [t]hey are going to do something called a super hip surgery. And the top portion of her femur, which is where her birth defect is, instead of curving into the hip socket, it hooks down, which is what is making her limp so badly. There is a portion of the hip that is underdeveloped that they are going to attempt to reconstruct. They're going to put a plate and a pin in it and hopefully straighten out the top portion of her femur bone. They also said that they will not know 100 percent for sure until they are actually in the surgery what type of development she has with her muscles and ligaments, so there is a possibility of repairing or reconstructing those at the same time.

R. 180. Plaintiff next explained that the possibility of limb lengthening is not being proposed at this point: "[w]e've been given the option of both amputation and for limb lengthening, but her discrepancy is so severe that it's up to us." R. 180. Plaintiff's plan is to wait and see how much Lexxis grows on her own. R. 181. Plaintiff explained that Lexxis has approximately a 3.5 inch shoe lift on her shoe now and that at maturity, the discrepancy between her two legs will be between 15 and 17 inches. R. 181.

Based upon our examination of the hearing transcript, we find that there was prejudice or unfairness to the Plaintiff in the administrative hearing in that the ALJ failed to discharge his obligation to develop a compete record. Specifically, the critical issue with respect to Plaintiff's claim was Lexxis's abilities within the domain area of "Moving About and Manipulating Objects." With respect to this domain, the regulations explain that with respect to "older infants and toddlers (age 1 [12 months old] to attainment of age 3 [36 months old])," such as Lexxis who was 19 months old at the time of the ALJ hearing, "[a]t this age, you should begin to explore

actively a wide area of your physical environment, using your body with steadily increasing control and independence from others. You should begin to walk and run without assistance, and climb with increasing skill. You should frequently try to manipulate small objects and to use your hands to do or get something that you want or need. Your improved motor skills should enable you to play with small blocks, scribble with crayons, and feed yourself." 20 C.F.R. § 416.926 a(b)(1)(iv). Thus, the ALJ should have been focused upon Lexxis' ability to walk, run and climb. This he did not do.

In particular, while the ALJ focused his inquiry on Lexxis's ability to walk, at no point did he discuss with Plaintiff whether Lexxis had begun to "climb with increasing skill." Nor did he ask any followup questions to Plaintiff's statement that "she doesn't really keep up as far as like running around." Finally, at no point did the ALJ actually view the quality of Lexxis' ability to ambulate, instead choosing to ask Plaintiff if Lexxis "wanted to walk around the room a bit, would she be able to do so?" These failure to so inquire clearly prejudiced Plaintiff. Accordingly, this matter is properly remanded back to the Commissioner for further consideration of whether Lexxis is disabled consistent with this Opinion.

**VI. Conclusion.**

The Defendant's motion for summary judgment is denied and Plaintiff's motion for summary judgment is granted to the extent it seeks a remand and is otherwise denied. An appropriate order follows:

ORDER

AND NOW, this 20th day of December, 2005, it is HEREBY ORDERED, ADJUDGED and DECREED that Plaintiff Nicole Maloney's Motion for Summary Judgment (Doc. #6) is granted to the extent it seeks a remand to the Commissioner and otherwise denied.

It is further ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment (Doc. # 8) is denied.

This matter shall be remanded back to the Commissioner of Social Security FORTHWITH for further proceedings consistent with the Opinion accompanying this Order.

The Clerk of Court is to mark this case CLOSED.

                        S/Maurice B. Cohill, Jr.
                        Maurice B. Cohill, Jr.
                        Senior District Judge